IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARWIN NATIONAL ASSURANCE COMPANY, as subrogee of Rich-Caulfield MLK Venture; and City of Cambridge<br>1807 North Market Street<br>Wilmington, DE 19802, | CIVIL ACTION NO.<br><br>**JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| WAYNE J. GRIFFIN ELECTRIC, INC.<br>116 Hopping Brook Road<br>Holliston, MA 01746, | |
| Defendant. | |

## COMPLAINT

Plaintiff, Darwin National Assurance Company, as subrogee of Rich-Caulfield MLK Venture, and City of Cambridge, by and through its counsel, complaining of Defendant Wayne J. Griffin Electric, Inc. hereby avers, upon information and belief, as follows:

## THE PARTIES

1. Plaintiff, Darwin National Assurance Company [hereinafter "Darwin"], is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1807 North Market Street, Wilmington, Delaware.

2. At all times material hereto, Plaintiff Darwin was duly authorized to issue policies of insurance within the Commonwealth of Massachusetts.

3. Defendant, Wayne J. Griffin Electric, Inc. [hereinafter "Griffin"], is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located in Holliston, Massachusetts.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is proper pursuant to 28 USC §1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

5. Venue is proper in this district pursuant to 28 USC §1391 as the events or omissions giving rise to the claims at issue occurred within this district and defendant is subject to personal jurisdiction within the district.

## GENERAL AVERMENTS

6. At all times material hereto, Rich-Caulfield MLK Venture and the City of Cambridge [hereinafter collectively "MLK"], were constructing a multi-level school building at 100 Putnam Avenue, Cambridge, Massachusetts [hereinafter "the School"].

7. At all times material hereto, Plaintiff Darwin insured MLK's interest at the Building. [See Declaration Sheet attached hereto as Exhibit "A"].

8. Prior to May 20, 2015, Defendant Griffin was the electrical subcontractor for the construction of the School. [See Contract attached hereto as Exhibit **"B"].**

9. On or about May 20, 2015, a fire originated on the roof in the center section of the School due to careless disposal of cigarettes or smoking materials, and resulted in severe damage.

10. Given the fire and extensive resulting damages, MLK submitted a claim to Plaintiff Darwin, and pursuant to the terms and conditions of its police of insurance, Plaintiff Darwin has and will pay the fair and reasonable costs of the resulting damage, as covered under the applicable policy.

11. To the extent of its payments, Plaintiff Darwin is subrogated to the rights of MLK.

## COUNT   - NEGLIGENCE

12. Plaintiff incorporates the previous paragraphs, by reference.

13. The fire and resulting damage was caused by the carelessness, negligence, gross negligence and/or negligent acts and omissions of Defendant Wayne J. Griffin Electric, Inc., acting by and through their agents and employees, acting within the scope and course of their employment, as follows:

   a) allowing and/or permitting employees and agents to use, extinguish, and/or dispose of cigarettes or other smoking materials at the School;

   b) failing to take proper and adequate safety precautions while using cigarettes or other smoking materials at the School;

   c) improperly disposing of and/or improperly extinguishing cigarettes or other smoking materials at the School;

   d) failing to ensure that employees and agents at the building properly and safely used, extinguished, and/or disposed of cigarettes or other smoking materials; and

   e) failing to take adequate and necessary steps to protect the School from the ignition and spread of a fire.

14. As a direct and proximate result of the aforesaid negligence, carelessness, recklessness, gross negligence, and/or negligent acts and/or omissions of Defendant Griffin, the Fire resulted in damages and destruction to Plaintiff s Insureds' Building.

3

WHEREFORE, Plaintiff Darwin respectfully requests judgment be entered in its favor and against Defendant Wayne J. Griffin Electric, Inc., in an amount in excess of $75,000.00, together with interest and other such further relief as this Court may grant.

        Plaintiff Darwin National Assurance Company,
a/s/o Rich-Caulfield MLK Venture, City of Cambridge
By Its Attorneys,

/s/ Patrick J. Loftus III
_____
Patrick J. Loftus, III BBQ # 303310
Law Offices of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA  02108
(617) 723-7770
soxdctr@gmail.com

CO-COUNSEL:
James P. Cullen, Jr. **BBQ#** 675217
Cozen O'Connor
One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215) 665-4102

jcullen@cozen.com

# EXHIBIT A



# DARWIN NATIONAL ASSURANCE COMPANY
9 Farms Spring Road, Farmington, CT 06032 · Tel. (860) 284-1300 · Fax (860) 284-1301

## COMMERCIAL INLAND MARINE → DECLARATIONS

POLICY NUMBER: 0308-2503             RENEWAL OF:

PRODUCER NAME AND ADDRESS::  AmWINS Brokerage
                              200 S. Broad Street, Suite 460
                              Philadelphia, PA 19102

NAME OF INSURED:    Rich-Caulfield MLK Venture; City of Cambridge

MAILING ADDRESS:    29 Crafts Street
                    Newton, MA 02458

POLICY PERIOD:   From: April 1, 2013          To: August 1, 2015          at
                 12:01 a.m. Standard Time at your mailing address shown above.

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM, WE PROVIDE THE INSURANCE AS DESCRIBED IN THIS POLICY.

BUSINESS DESCRIPTION:   Construction of 155,000 sqft School

LOSS PAYABLE NAME AND MAILING ADDRESS:


LOCATION ADDRESS:      100 Putnam Avenue
                       Cambridge, MA 02139

FORMS APPLICABLE TO ALL COVERAGES:

1. CL 1045 (01/2008) Policyholder Disclosure Notice Of Terrorism Insurance Coverage
2. CM 00014 00 (11/2010) What To Do If A Loss Occurs General Information
3. IM 7055 (09/2008) Schedule Of Coverages - Builders Risk - Comprehensive Form
4. IM 7080 (09/2008) Delay In Completion Schedule - Includes Rental Income And Income Coverage
5. IM 7086 (09/2008) Earthquake And Flood Schedule
6. IM 2043 (08/2008) Amendatory Endorsement - Massachusetts
7. CL 0233 (12/2003) Amendatory Endorsement - Massachusetts
8. CL 0700 (10/2006) Virus Or Bacteria Exclusion
9. IM 7072 (09/2008) Ordinance Or Law Coverage
10. IM 7083 (08/2010) Equipment Breakdown And Testing Coverage
11. IM 7085 (09/2008) Earthquake And Flood Coverage Endorsement
12. CM 00017 00 (07/2011) Deductible endorsement for Flood EQ and Wind

CM 00011 00 (08/10)                                      Page 1 of 2

Includes copyrighted material of the American Association of Insurance Services,
2002 with its permission

13. IM 7061 (10/2011) Delay In Completion Coverage Part
14. CL 0100 (03/1999) Common Policy Conditions
15. IM 7050 (09/2008) Builders Risk Coverage - Scheduled Jobsite Form - Comprehensive Form

PREMIUM: $92,475

IN WITNESS WHEREOF, WE HAVE CAUSED THIS POLICY TO BE EXECUTED AND ATTESTED. THIS POLICY SHALL NOT BE VALID UNLESS COUNTERSIGNED BY OUR DULY AUTHORIZED REPRESENTATIVE.

PRESIDENT                                                         ASST. SECRETARY

**AUTHORIZED REPRESENTATIVE**

This policy is insured by a company which is not admitted to transact insurance in the commonwealth, is not supervised by the commissioner of insurance and, in the event of an insolvency of such company, a loss shall not be paid by the Massachusetts Insurers Insolvency Fund under chapter 1750.

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
FORM FOR SUBCONTRACT BETWEEN CONSTRUCTION MANAGER
AND TRADE CONTRACTOR AS SET FORTH IN THE CONTRACT DOCUMENTS

THIS AGREEMENT MADE THIS 10th DAY OF March, 2014 by and between Rich-Caulfield MLK Venture, 29 Crafts Street, Suite 300, Newton, MA 02458 a corporation organized and existing under the laws of Massachusetts hereinafter call the "Construction Management at Risk Firm" and Wayne J. Griffin Electric, Inc., 116 Hopping Brook Road, Holliston, MA 01746, a corporation organized and existing under the laws of Massachusetts hereinafter called the "Trade Contractor".

WITNESSETH that the Construction Management at Risk Firm and the Trade Contractor for the considerations hereafter named, agree as follows:

I. The Trade Contractor agrees to furnish all labor and materials required for the completion of all work specified in Section No. 260000 of the Specifications for Electrical and the Plans referred to therein and Addenda Nos. 1, 2, 3, 4 and 5 for the Martin Luther King Jr. School Construction Project (File No. 5849), Cambridge, MA all as prepared by Perkins Eastman. All work shall be in accordance with the contract documents listed on Exhibit A; and the detailed Scope of Work listed on Exhibit B. The Construction Management at Risk Firm agrees to pay the Trade Contractor as full payment for all the work in Exhibit B the sum of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00). This price includes the following alternates:

　　Alternate No. (s)　　　　N/A

(A) The Trade Contractor agrees to be bound to the Construction Management at Risk Firm by the terms of the hereinbefore described plans; specifications (including all general conditions stated therein) and Addenda Nos. 1, 2, 3, 4 and 5 and to assume to the Construction Management at Risk Firm all the obligations and responsibilities that the Construction Management at Risk Firm by those documents assumes to the City of Cambridge (City) hereinafter called the "Public Agency," except to the extent that provisions contained therein are by their terms or by law applicable only to the Construction Management at Risk Firm.

(B) As it pertains to subcontractors, the Indemnification in Exhibit C of the Owner Construction Manager Agreement, which is incorporated by reference into this Subcontract, is intended to and shall be interpreted to be consistent with M.G.L. c. 149, Section 29C, and nothing contained herein is intended to require a subcontractor to indemnify any party for personal injuries or property damage not caused by the subcontractor, its agents, employees or subcontractors.

　　MGL c 149 provides:
　　Section 29C. Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work, including without limitation, excavation, backfilling or grading, on any building or structure, whether underground or above ground, or on any real property, including without limitation any road, bridge, tunnel, sewer, water or other utility line, which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractors or items employees, agents or subcontractors, shall be void.

    (C) The Construction Management at Risk Firm agrees to be bound to the Trade Contractor by the terms of the hereinbefore described documents and to assume to the Trade Contractor all the obligations and responsibilities that the Public Agency by the terms of the hereinbefore described documents assumes to the Construction Management at Risk Firm, except to the extent that provisions contained therein are by their terms or by law applicable only to the Public Agency.

2. The Construction Management at Risk Firm agrees to begin, prosecute and complete the entire work specified by the Public Agency in an orderly manner so that the Trade Contractor will be able to begin, prosecute and complete the work described in this Trade Contract; and, in consideration thereof, upon notice from the Construction Management at Risk Firm, either orally or in writing, the Trade Contractor agrees to begin, prosecute and complete the work described in this Trade Contract in an orderly manner and in accordance with the Project Schedule attached as Exhibit C as it may be reasonably modified from time to time by agreement of the Construction Management at Risk Firm and the Trade Contractor.

3. The Trade Contractor agrees to furnish to the Construction Management at Risk Firm, on execution of this Trade Contractor Agreement and prior to commencing the work, evidence of workers' compensation insurance as required by law and evidence of public liability and property damage insurance of the type and in limits required to be furnished to the Public Agency by the Construction Management at Risk Firm. The insured indemnifies and hold harmless, waives subrogation and names as additional insured on a primary and non-contributory basis: W. T. Rich Company, Inc., the Owner and the Architect/Designer for the above-referenced project.

4. The Construction Management at Risk Firm agrees that no claim for services rendered or materials furnished by the Construction Management at Risk Firm to the Trade Contractor shall be valid unless written notice thereof is given by the Construction Management at Risk Firm to the Trade Contractor during the first ten (l0) days of the calendar month following that in which the claim originated.

5. This Trade Contractor Agreement is contingent upon the execution of an amendment to the contract between the Construction Management at Risk Firm and the Public Agency for the work of the Trade Contractor.

6. If the Trade Contractor should be adjudged a bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, or if he should persistently or repeatedly refuse or should fail, except in cases for which extension of time is provided, to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment to sub-trade subcontractors or for material or labor, or persistently disregard laws, ordinances or the instructions of the Construction Management at Risk Firm, or otherwise be guilty of a substantial violation of any provision of the contract, then the Construction Management at Risk Firm may, without prejudice to any other right or remedy and after giving the Trade Contractor and his surety seven days' written notice, terminate the employment of the Trade Contractor and take possession of the premises and of all materials, tools and appliances thereon and finish the work by whatever method he may deem expedient. In such case the Trade Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the trade contract price shall exceed the expense of finishing the work including compensation for additional architectural, managerial and administrative services, such excess shall be paid to the Trade Contractor. If such expense shall exceed such unpaid balance, the Trade Contractor shall pay the difference to the Construction Management at Risk Firm. The Construction Management at Risk Firm and Trade Contractor shall have the right to seek damages for breach of this Trade Contract without terminating this Trade Contract or ceasing performance hereunder.



7. Trade Contractor is directed to the following executive orders, which are incorporated herein from the general conditions of the Construction Manager at Risk Contract: Order 481, regarding undocumented workers; Order 478, regarding nondiscrimination and affirmative action; Order 130, regarding anti-boycott agreement; Order 484, regarding clean energy and efficient buildings; Order 390, regarding affirmative market programs; and Order 195, regarding access to records. Trade Contractor is further directed to M.G.L. c.7 s.22C, which restricts the investment of state funds in companies doing business in Northern Ireland.

8. The following exhibits are incorporated into their subcontract:
    a. Exhibit A: Contract Documents dated November 13, 2013
    b. Exhibit B: Detailed Scope of Work per Specification Section 260000
    c. Exhibit C: Project Schedule per Specification Section 01 1300 CM Project Schedule

IN WITNESS WHEREOF, the parties hereto have executed this agreement the date and year first above-written.

SEAL ATTEST: _____

Wayne J. Griffin Electric, Inc.
(Trade Contractor)

BY _____
Gerard W. Richards, Director of Operations

SEAL ATTEST: _____

Rich-Caulfield MLK Venture
(Construction Management at Risk Firm)

BY _____
Jonathan Rich, Chairman

GRIFFIN